RONALD J. HOLLAND (SBN 148687)
ron.holland@gtlaw.com
GREENBERG TRAURIG, LLP
101 Second Street, Suite 2200
San Francisco, CA 94105
Tel: (415) 655-1300
Fax: (415) 707-2010

RYAN C. BYKERK (SBN 274534)
ryan.bykerk@gtlaw.com
GREENBERG TRAURIG, LLP
18565 Jamboree Road, Suite 500
Irvine, CA 92612
Tel: (949) 732-6500
Fax: (949) 732-6501

JONATHAN A. SCHAUB (SBN 298892)
jonathan.schaub@gtlaw.com
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Tel: (310) 586-7700
Fax: (310) 586-7800

Attorneys for Defendants
DESTINATION XL GROUP, INC. and CASUAL MALE STORE, LLC

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSALINDA MARCHBANKS-POWELL, on behalf of herself and other current and former employees,<br><br>Plaintiff,<br><br>v.<br><br>DESTINATION XL GROUP, INC., a Delaware corporation; CASUAL MALE STORE, LLC, a Delaware limited liability company; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. **'24 CV 1733 L     VET**<br><br>**DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT**<br><br>*Filed concurrently with Declaration of Michael Parcels, Civil Case Cover Sheet, and Notice of Parties with Financial Interest*<br><br>Removed from San Diego Superior Court – Case No. 24CU006636C<br><br>State Complaint Filed:     August 19, 2024 |

NOTICE OF REMOVAL

TO THE HONORABLE CLERK FOR THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA, TO PLAINTIFF ROSALINDA MARCHBANKS-POWELL, AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendants Destination XL Group, Inc.[1] and Casual Male Store, LLC (together, "Defendants") hereby invoke this Court's jurisdiction pursuant to 28 U.S.C. section 1332, 1441, 1453, and 1711, and remove the above-entitled action to this Court from the Superior Court of the State of California, County of San Diego. This Court has original subject matter jurisdiction over Plaintiff's lawsuit under 28 U.S.C. section 1332(a) as (1) there is complete diversity of citizenship between Plaintiff and Defendants, and (2) the amount in controversy exceeds $75,000.[2] This Court also has original subject matter jurisdiction over this lawsuit under 28 U.S.C. section 1332(d), pursuant to the Class Action Fairness Act ("CAFA"), because (1) Plaintiff seeks to represent more than 100 class members, (2) no defendant is a state, state official, or other governmental entity, (3) there is sufficient diversity among the parties, and (4) Plaintiff's allegations place more than $5,000,000 in controversy, exclusive of interest and costs.

## BACKGROUND

1. On August 19, 2024, Plaintiff Rosalinda Marchbanks-Powell ("Plaintiff") filed an unverified civil Complaint against Defendants in the Superior Court of the State of California, County of San Diego, entitled *Rosalinda Marchbanks-Powell v. Destination XL Group, Inc. et al.*, Case No. 24CU006636C (the "Action"). The Action asserts six causes of action relating to various alleged violations of the California Labor Code, including a cause of action for civil penalties under

---

[1] Defendants maintain that Destination XL Group, Inc. never employed Plaintiff and is therefore not properly named as a defendant in Plaintiff's action. By filing this Notice of Removal, Destination XL Group, Inc. does not concede the propriety of its inclusion in this action.

[2] This Notice of Removal relies on the allegations, nature, and amount of damages that Plaintiff's Complaint places in controversy. Defendants refer to specific damage amounts solely to establish that the amount in controversy exceeds the jurisdictional minimum under both traditional diversity and the Class Action Fairness Act. Defendants maintain that Plaintiff's claims lack merit, and that Defendants are not liable to Plaintiff for any amounts whatsoever. Indeed, "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendants'] liability." *Lewis v. Verizon Comms., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

the California Labor Code Private Attorneys General Act of 2004 ("PAGA"). A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

2. In accordance with 28 U.S.C. section 1446(a), true and correct copies of all pleadings, process, and orders in the State Court file (except for the Complaint which is attached hereto as **Exhibit A**) are attached hereto as **Exhibit B**.

3. In accordance with 28 U.S.C. section 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served on all parties' counsel and filed with the Clerk of the San Diego County Superior Court. Therefore, all procedural requirements under 28 U.S.C. section 1446 have or will be satisfied.

4. Venue of this action lies in the United States District Court for the Southern District of California pursuant to 28 U.S.C. sections 1441 *et seq.* and 1391 because this is the judicial district in which the Action arose.

## NATURE OF THIS REMOVAL PLEADING

5. Defendants hereby provide "a short and plain statement of the grounds for removal" pursuant to 28 U.S.C. section 1446(a). In this regard, a notice of removal "need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014). Rather, "if the plaintiff contests the defendant's allegation . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 553–54. As recently held by the Ninth Circuit:

> [W]hen a notice of removal plausibly alleges a basis for federal court jurisdiction, a district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdiction requirements are satisfied.

*Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924 (9th Cir. 2019) (rejecting *sua sponte* remand).

6. If the Court requires that Defendants provide any of the facts alleged in this pleading, or to otherwise establish jurisdiction, Defendants are prepared to do so. Similarly, Defendants are prepared to establish this Court's jurisdiction in response to a motion to remand filed by Plaintiff which seeks to challenge the factual basis for this Court's jurisdiction (though Defendants doubt

any such challenge could or will be made, as the facts establishing this Court's jurisdiction cannot reasonably be disputed).

## TRADITIONAL DIVERSITY JURISDICTION

7.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. section 1332(a).

8.    Diversity jurisdiction exists where there is diversity of citizenship between the parties at the time the lawsuit is filed. *Grupo Dataflux v. Atlast Global Group, LP*, 54 U.S. 567, 571 (2004).

9.    For traditional diversity purposes, a natural person's citizenship is determined by the person's State of domicile. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("The natural person's state citizenship is then determined by her state of domicile, not her state of residence.") "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Id.*

10.    It is sufficient for a removing party to establish diversity based on information and belief, and additional evidence is not required unless the diversity or a party's citizenship is challenged by the other party or the court. "A defendant's allegations of citizenship may be based solely on information and belief." *Ehrman v. Cox Comms., Inc.*, 932 F.3d 1223, 1227 (9th Cir. 2019) (further explaining that a "party's allegation of minimum diversity may be based on 'information and belief.' *Carola Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1087 (9th Cir. 2014). The pleading 'need not contain evidentiary submissions.'").

11.    Plaintiff's Complaint alleges she is "an individual residing in the State of California." Compl. ¶ 10. Thus, on information and belief, Plaintiff is domiciled in and a citizen of California.

12.    For diversity purposes, a corporation is a citizen of the State in which it is organized and the State where it has its principal place of business. 28 U.S.C. § 1332(c)(1). For traditional diversity (though not for CAFA) purposes, "an LLC is a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Props. Anchorage, LP*, 437 F. 3d 894, 899 (9th Cir. 2006).

13.    Plaintiff alleges that Defendant Destination XL Group, Inc. "is a corporation

organized and existing under the laws of Delaware, licensed to do business and actually doing business in the State of California, including the County of San Diego." Compl., ¶ 11.

14.    While Destination XL Group, Inc. does not do any business within the State of California, it is a Delaware corporation and has its principal place of business in Massachusetts.

15.    Plaintiff alleges that Defendant Casual Male Store, LLC is a limited liability company organized and existing under the laws of Delaware, licensed to do business and actually doing business in the State of California, County of San Diego." Compl., ¶ 12.

16.    Casual Male Store, LLC is indeed a Delaware limited liability company, with its principal place of business in Massachusetts. Destination XL Group, Inc. is the sole member and owner of Casual Male Store, LLC.  As set forth above, Destination XL Group, Inc. is a Delaware corporation with its principal place of business in Massachusetts.

17.    Moreover, as more fully set forth *infra*, for diversity purposes under CAFA, a limited liability company is treated as an unincorporated association and therefore considered a citizen of the State under whose laws it is organized and the State in which it has its principal place of business. 28 U.S.C. § 1332(d)(10); *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 699–700 (4th Cir. 2010) ("[W]e hold that . . . a limited liability company is an 'unincorporated association' as that term is used in 28 U.S.C. § 1332(d)(10) and therefore is a citizen of the State under whose laws it is organized and the State where it has its principal place of business."); *City of E. St. Louis, Illinois v. Netflix, Inc.*, 83 F.4th 1066, 1071 (7th Cir. 2023) (holding that an LLC is an unincorporated association pursuant to Section 1332(d)(1); "[b]ut § 1332(d)(10) tells us that, for the purposes of § 1332(d), an unincorporated entity is treated like a corporation under § 1332(c)(1): one citizenship for the state of its principal place of business, another for the state of its organization, and the investors' citizenship ignored."); *Hernandez v. Pure Health Research, LLC*, No. 23-cv-00971-BAS-DEB, 2023 WL 70209213, at *3 (S.D. Cal. Oct. 25, 2023) ("This Court, applying the text of 28 U.S.C. § 1332(d)(10) and following the guidance of the above sister courts, also adopts the rule that in a CAFA case, where a party is an LLC, the LLC's citizenship shall be the State under whose laws it is organized and the State where it has its principal place of business."); *Jack v. Ring LLC*, 553 F. Supp. 3d 711, 715 (N.D. Cal. 2021) ("an LLC is an

unassociated incorporation for purposes of CAFA").

18.    Thus, for CAFA purposes as well, based on the analysis above, Defendants are of appropriately diverse citizenship.

19.    The only other defendants named in Plaintiff's Complaint are merely fictitious parties identified as "DOES 1 through 50," whose citizenship must be disregarded for the purpose of removal. 28 U.S.C. § 1441(a) ("For purposes of removal under this Chapter, the citizenship of defendants used under a fictitious name shall be disregarded.") Thus, there are no other defendants to join the removal of this action to this Court.

20.    None of the Defendants were at the time of the filing of the Complaint, or the time of this Removal, citizens of the State of California. There exists, therefore, complete diversity between Plaintiff and Defendants.

### CAFA JURISDICTION

21.    Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them. *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976); *see also Cohens v. Virginia*, 19 U.S. 264, 404 (1821) (federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given"); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (federal courts "have a strict duty to exercise the jurisdiction that is conferred upon them by Congress").

22.    Further, CAFA jurisdiction—at issue here—is a favored form of jurisdiction. CAFA applies to "any class action before or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. § 1332(d)(8). This case is a putative "class action" under CAFA because it was brought under California Code of Civil Procedure section 382, California's state statute authorizing an action to be brought by one or more representative persons as a class action. *See* 28 U.S.C. § 1332(d)(1)(B); Compl., ¶ 5 ("This class action is brought pursuant to California Code of Civil Procedure § 382.")

23.    CAFA jurisdiction is uniquely subject to no anti-removal presumption. Through CAFA, Congress  has expressed its "overall intent to strongly favor the exercise of federal jurisdiction over class action with interstate ramifications," *Jordan v. Nationstar Mort. LLC*, 781

F. 3d 1178, 1183 (9th Cir. 2015) (quoting *Dart Cherokee*, 574 U.S. at 89), with "all doubts resolved in favor of exercising jurisdiction over the case." *Dutcher v. Matheson*, 840 F.3d 1183, 1190 (10th Cir. 2016); *see also Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) (same); *Reece v. AES Corp.*, 638 F. App'x. 755, 767–68 (10th Cir. 2016) (same). Unlike other forms of removal jurisdiction, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee*, 574 U.S. at 89; *see also Allen v. Boeing Co.*, 784 F.3d 625, 633 (9th Cir. 2015) ("there was no presumption against [CAFA] removal jurisdiction"; CAFA should be read "with a strong preference that interstate class actions should be heard in a federal court").

24.     In addition to traditional diversity, this Court also has original jurisdiction over this case under CAFA, 28 U.S.C. section 1332(d), and this case may also be removed pursuant to the provisions of 28 U.S.C. section 1441(a). Specifically, this is a putative civil class action wherein: (1) the proposed class contains at least 100 members; (2) no Defendant is a state, state official, or other governmental entity; (3) there is requisite (and in fact complete) diversity among the parties to this action; and (4) the total amount in controversy for all putative class members exceeds $5,000,000. Therefore, CAFA authorizes removal of such actions in accordance with 28 U.S.C. section 1446, and this Court should exercise the jurisdiction given to it under CAFA.[3]

**A.     The Putative Class Consists of More Than 100 Members.**

25.     Jurisdiction is proper under CAFA if the putative class contains at least 100 members. 28 U.S.C. § 1332(d)(5)(B).

26.     Plaintiff seeks to represent and certify the following putative class: "[A]ll non-exempt employees of Defendants who worked in California during the period from April 6, 2020 to the present . . . ." Compl., ¶ 16. While Defendants deny that class treatment is permissible or appropriate here, the proposed class, as alleged, consists of over 100 members.  In fact, Plaintiff appears to seek to represent approximately 312 putative class members. *See* Declaration of Michael Parcels ("Parcels Decl."), ¶ 5.

---

[3] Defendants deny Plaintiff's claims and deny that this action may be certified as a class action. Nevertheless, for purposes of establishing removal under CAFA, Defendants concede that Plaintiff's allegations identify a putative class of more than 100 members and places in controversy an amount that exceeds $5,000,000 in the aggregate.

27.    In addition, Plaintiff seeks to represent and certify six subclasses consisting of (1) a meal period subclass, consisting of employees who worked one or more shifts in excess of 6 hours without receiving a 30-minute break, (2) a rest break subclass, consisting of employees who worked one or more shifts of 3.5 hours or more without receiving a paid 10-minute break, (3) an overtime subclass, consisting of employees who worked one or more shifts in excess of 8 hours in a day or 40 in a week and were not properly paid for same, (4) a minimum wage subclass, consisting of employees who were not paid minimum wage, (5) a wage statement subclass, consisting of all employees who received an itemized wage statement, and (6) a separated employee subclass, consisting of all employees who were not properly paid all wages on termination or within 72 hours thereof. Compl., ¶ 16.

28.    Defendants have employed about 312 non-exempt employees in California since April 6, 2020. Parcels Decl., ¶ 5. Thus, the class, as defined in the pleadings, exceeds 100 members.

**B.    Defendants Are Not Governmental Entities.**

29.    Defendants are not state entities, state officials, or other governmental entities.

**C.    Minimum Diversity Exists.**

30.    As already establish with regards to traditional diversity, a complete diversity of citizenship exists here between Plaintiff and Defendants.

31.    As introduced *supra*, diversity is only *more* concretely established under CAFA as, for CAFA purposes, a limited liability company is treated as an unincorporated association, and is thus considered a citizen of the State where it has its principal place of business and the State under whose laws it is organized. 28 U.S.C. § 1332(d)(10); *Jack*, 553 F. Supp. 3d at 715 ("an LLC is an unassociated incorporation for purposes of CAFA").

32.    Defendants are both formed in Delaware with their principal places of business in Massachusetts.

33.    Because Plaintiff is deemed a citizen of California, and Defendants are citizens of Delaware and Massachusetts for purposes of 28 U.S.C. § 1332(d), the parties are adequately diverse. 28 U.S.C. § 1332(d)(2).

/ / /

NOTICE OF REMOVAL

**AMOUNT IN CONTROVERSY**

34. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Canesco v. Ford Motor Co.*, 570 F. Supp. 3d 872, 888 (S.D. Cal. 2021) (citing *Dart Cherokee*, 574 U.S. at 89); *see also Dart Cherokee*, 574 U.S. at 89 (noting "defendants may simply allege or assert that the jurisdictional threshold has been met"). A defendant may rely on a "chain of reasoning" that is based on "reasonable" "assumptions." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201–01 (9th Cir. 2015). "An assumption may be reasonable if it is founded on the allegations of the complaint." *Arias*, 936 F.3d at 925; *see also Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) ("[I]n *Arias* we held that a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements.") (quotations and citations omitted). Upon removal to federal court, "the defendant's amount-in-controversy should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 574 U.S. at 87.

35. Moreover, in calculating the amount placed in controversy, defenses that a defendant may assert—such as a statute of limitations—are not considered. *Riggins v. Riggins*, 415 F.2d 1259, 1262 (9th Cir. 1969) ("[T]he possibility of such a defense being valid does not affect the jurisdiction of the district court to hear and determine the controversy"); *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010) (that "a defendant might have a valid defense that will reduce recovery to below the jurisdictional amount does not mean the defendant will ultimately prevail on that defense").

36. Plaintiff's Complaint does not allege any amounts in controversy whatsoever. However, Plaintiff asserts five causes of action on a class-wide basis, as well as a PAGA representative claim for civil penalties. Although Defendants deny that Plaintiff's claims have any merit, for the purposes of meeting the jurisdictional requirements for removal only, if Plaintiff were to prevail on every claim and allegation in her Complaint on behalf of herself, the putative class, and aggrieved employees, the requested monetary recovery would far exceed the requisite $75,000 in controversy for traditional diversity and $5,000,000 for CAFA.

/ / /

**A.      Plaintiff's Individual Claims Amount to At Least $75,000 in Controversy**

37.     Taking Plaintiff's individual claims at face value, the Complaint makes clear that the amount in controversy exceeds the requisite $75,000 for traditional diversity purposes.

38.     Plaintiff alleges a host of Labor Code violations against Defendants on a class-wide basis. For purposes of the traditional diversity jurisdiction amount in controversy, class claims may not be aggregated to satisfy the requirement. 28 U.S.C. § 1332(a); *Snyder v. Harris*, 394 U.S. 332 335 (1969). Instead, Plaintiff's individual claims must alone satisfy the $75,000 amount in controversy requirement. *Hawkins v. Kroger Co.*, 337 F.R.D. 518, 532 (S.D. Cal. 2020) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005).

39.     Plaintiff also alleges a PAGA claim. "Following the enactment of PAGA in 2004, employees may stand in the shoes of the Labor Commissioner and recover civil penalties for Labor Code violations." *Hamilton v. Wal-Mart Stores, Inc.*, 39 F.4th 575, 579 (9th Cir. 2022). As with class claims, when determining the amount in controversy relating to a PAGA claim, courts do not aggregate the penalties available to all aggrieved employees, but instead limit the analysis to the PAGA penalties available to the plaintiff. *Camela v. Costco Wholesale Corp.*,971 F.3d 845, 849 (9th Cir. 2020) ("[w]e concluded that PAGA civil penalties could not be aggregated for this purpose").

40.     In the Complaint, Plaintiff asserts claims for meal period and rest break premiums, minimum wage and overtime violations, including liquidated damages, wage statement violations, and waiting time penalties. Plaintiff also asserts a right to PAGA penalties for each of these claims. In determining whether the amount in controversy exceeds $75,000, the Court must presume that Plaintiff prevails on each and every one of her claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability") (also citing *Angus v. Shiley, Inc.*, 989 F 2d 142, 146 (3d Cir. 1993) ("[T]he amount in controversy is not measured by the low end of an open ended claim, but rather by reasonable reading of the value of the rights being litigated.").

/ / /

**1.    Plaintiff's Individual Meal Period and Rest Break Claims Place $11,124 in Controversy.**

41.    If an employer fails to provide a compliant meal break or rest period, "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided. Lab. Code 226.7(c).

42.    Plaintiff alleges that "[a]s a pattern and practice," Defendants "did not provide Plaintiff . . . with all required meal periods and rest breaks . . . ." Compl., ¶ 30.

43.    Because of the violations allegedly arising from this alleged "pattern and practice," Plaintiff claims that she has "an entitlement to recovery . . . for the balance of the unpaid premium compensation . . . including interest, attorneys' fees, and costs of suit." Compl., ¶ 33.

44.    Based on Plaintiff's allegations, including that Defendants failed to provide compliant meal periods as a pattern and practice, it is reasonable to assume, for the purposes of this jurisdictional analysis only, that Plaintiff suffered two meal period and two rest break violations per workweek. *See Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 912 (N.D. Cal. 2016) (Finding that defendant's "assumption of one violation per week is reasonable based on" plaintiff's allegations that "defendants maintained a 'policy or practice' of both meal and rest break violations."); *see also Amezcua v. CRST Expedited, Inc.*, No. 4:22-cv-06501-YGR, 2023 U.S. Dist. LEXIS 26469, at *13 (N.D. Cal. Jan. 31, 2023) (accepting an assumption of 2 violations per week, "[t]he Court finds this calculations reasonable. Plaintiff alleges that defendants had a *policy and practice* of denying meal periods and 'as such, as this juncture, every meal period of every putative class member during the class period is in controversy") (italics in original)

45.    Plaintiff worked for Casual Male Store, LLC from about August 10, 2020 through December 27, 2023, a period of about 3 years and 4 months during which Plaintiff worked approximately 180 workweeks. Parcels Decl., ¶ 4. Plaintiff's hourly wage during that time was approximately $15.45, plus commissions, though Defendants use only the base hourly rate for simplicity in these calculations. Parcels Decl., ¶ 4. Assuming two meal period and two rest break violations each workweek, these claims place **$11,124.00** in controversy ($5,562 each for meal periods and rest breaks).

NOTICE OF REMOVAL

## 2.    Plaintiff's Individual Minimum and Overtime Wage Claims Place $41,715 In Controversy.

46.    Plaintiff's individual claims for failure to pay minimum and overtime wages place at least an additional $41,715 in controversy.

47.    If an employer pays wages of less than minimum wage, the employee "is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage." Lab. Code § 1194(a). In addition, the "employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid." Lab. Code § 1194.2.

48.    Plaintiff alleges that "[a]s a pattern and practice," Defendants regularly failed to compensate her for all hours worked, "including preliminary and postliminary time spent working before and after the scheduled shift (including opening and closing work), time spent working through recorded meal periods, and 'unauthorized' overtime, as well as providing unlawful comp time." Compl., ¶ 36. Plaintiff also alleges that Defendants failed to pay her at the correct regular rate of pay. *Id.*

49.    Because of the violations allegedly arising as a result of this "pattern and practice," Plaintiff alleges that she is entitled to recover "for the unpaid balance of the full amount of minimum and overtime wages owing, including liquidated damages, interest, attorneys' fees, and costs of suit . . . ." Compl, ¶ 38. In other words, Plaintiff seeks to recover double the allegedly unpaid minimum wages: the wages themselves, and liquidated damages in equal amount.[4] Of course, Plaintiff also alleges she is entitled to unpaid overtime wages.

50.    Based on Plaintiff's allegations, including the various theories of liability alleged, it is reasonable to assume, for purposes of this jurisdictional analysis only, that Plaintiff worked at least five unpaid hours per week, particularly because Plaintiff alleges uncompensated work before and after *every* shift. *See Jauregui v. Roadrunner Transp. Servs.*, 28 F.4th 989, 993–94 (9th Cir.

---

[4] Courts routinely include such liquidated damages in amount in controversy calculations. *See, e.g.*, *Jauregui v. Roadrunner Transp. Servs.*, 28 F. 4th 989, 995, n.7 (9th Cir. 2022) ("This figure was calculated by using the same formula relied on by the district court: multiply the hourly wage ($10.50) with the number of workweeks (63,431) for a total of $666,025.50. That number is then doubled for the liquidated damages, for a total of $1,332,051.").

12
NOTICE OF REMOVAL

2022) (accepting an assumption of one unpaid hour of minimum wage per workweek as reasonable); *Mendoza v. OSI Indus., LLC*, No. EDCV 22-1202 JGB (SPx), 2022 U.S. Dist. LEXIS 167940, at *13–14 (C.D. Cal. Sep. 16., 2022) (accepting defendant's estimate of "five hours of minimum wage per week" due to plaintiff's allegation that "minimum wage allegations are alleged to have occurred as a policy and practice"); *Francisco v. Emeritus Corp.*, No. CV 17-2871-BRO (SSx), 2017 WL 2541401, at *7 (C.D. Cal. June 12, 2017) ("Because Plaintiff claims that unpaid minimum wage and overtime violations occurred regularly, as a pattern and practice, the Court finds Defendants' assumption of one minimum wage and overtime violation per workweek to be reasonable.") (citing *Campbell v. Vitran Exp., Inc.*, 471 Fed. App'x 646, 648–49 (9th Cir. 2012)).

51. Plaintiff worked approximately 180 workweeks at an hourly rate of $15.45. Assuming five minimum wage violations per week (i.e. every shift), Plaintiff's minimum wage claim places $13,905.00 in controversy, to start, with an additional $13,905.00 in liquidated damages. Assuming five overtime wage violations per week as well, Plaintiff's overtime claim places another $13,905.00 in controversy, for a total amount in controversy attributable to these claims of **$41,715.00**.

### 3.    Plaintiff's Individual Wage Statement Claim Places At Least an Additional $4,000 in Controversy.

52. Plaintiff's claim for failure to provide compliant wage statements puts at least another $4,000 in controversy.

53. An employee who suffers "injury as  result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." Lab. Code § 226(e)(2)(B).

54. Plaintiff alleges that Defendants failed "in their affirmative obligation to keep *accurate* records," including, e.g., by failing to "maintain and provide wage statements reflecting how commissions for Plaintiff . . . were calculated at time of hire, during employment, or with each payment or non-payment of commission," and, due to the other alleged Labor Code

13

NOTICE OF REMOVAL

violations, failing to keep accurate records of Plaintiff's "gross wages earned, total hours worked, net wages earned, and all applicable hourly rates and the number of hours worked at each hourly rate." Compl., ¶ 41.

55. Based on this "pattern, practice and uniform administration of corporate policy," Plaintiff alleges that she is entitled to recovery "for all damages and/or penalties pursuant to Labor Code § 226, including interest thereon, penalties, reasonable attorneys' fees, and costs of suit." Compl., ¶ 42.

56. Plaintiff's allegations place every wage statement at issue, in that Plaintiff alleges that each wage statement was facially defective, in contending that her other alleged Labor Code violations caused inaccurate accountings in all wage statements. Defendants therefore assume, for the purposes of this jurisdictional analysis only, that *each* wage statement provided to Plaintiff constitutes one violation. *See Duberry v. J. Crew Grp., Inc.*, No. 2:14-cv-08810-SVW-MRW, 2015 U.S. Dist. LEXIS 99171, at *7 (C.D. Cal. July 28, 2015) ("[C]ourts have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice (or other similar language) and where the plaintiff offers no evidence rebutting this violation rate."); *Mejia v. DHL Express (USA), Inc.*, No. CC 15-890-GHK (JCx), 2015 U.S. Dist. LEXIS 67212, at *10 (C.D. Cal. May 21, 2015) (finding that a 100% violation rate is permissible where plaintiff alleged uniform conduct).

57. Defendants estimate Plaintiff received approximately 90 wage statements during the relevant period (based on her 180 workweeks). Parcels Decl., ¶ 7. Even declining to include the higher "subsequent" penalties, and reasonably assuming for the reasons stated above that each wage statements constitutes a violation, the claim therefore places at least **$4,000.00** in controversy (90 wage statements x $50 penalty = $4,500, capped by statute at $4,000).

### 4. Plaintiff's Individual Waiting Time Penalty Claim Places At Least $3,708 in Controversy.

58. Plaintiff's claim for failure to pay all wages at separation or termination puts at least $3,708 in controversy.

59. If an employer intentionally fails to pay all wages due to an employee at the time of

14

NOTICE OF REMOVAL

termination, or within 72 hours after resignation, then the wages "shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced," for a maximum of 30 calendar days. Lab. Code §§ 201–203.

60.     To calculate waiting time penalties, an employee's daily rate of pay is multiplied by a maximum of 30 days, depending on the length of delay in receipt of wages. *See Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (1998) (holding that waiting time penalty is "equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days"); *Tajonar v. Echosphere, L.L.C.*, No. 14cv2732–LAB (RBB), 2015 WL 4064642, at *4 (S.D. Cal. July 2, 2015) (same). Where final "wages [due] are alleged to have not been paid, the full thirty-days may be used" when estimating that amount in controversy. *Marentes v. Key Energy Servs. Cal., Inc.*, No. 1:13–cv–02067 AWI JLT, 2015 WL 75616, at *9 (E.D. Cal. Feb. 23, 2015); *see also Crummie v. CertifiedSafety, Inc.*, Case No. 17-cv-03892-RS, 2017 WL 4544747, at *3 (N.D. Cal. Oct. 11, 2017) (where a plaintiff alleges final wages were not paid timely, it is "completely reasonable to assume waiting time penalties accrued to the thirty-day limit").

61.     Plaintiff claims that because of the foregoing alleged underpayments (relating to alleged unpaid meal period and rest break premiums, and minimum and overtime wages, "Defendants regularly failed to pay Plaintiff . . . [her] final wages . . . and accordingly owe waiting time penalties . . . ." Compl., ¶ 45.

62.     Plaintiff worked an average of about 8 hours per workday, at an hourly rate of $15.45 (though Plaintiff also received commissions and other higher hourly rates), resulting in an average daily wage rate of $123.60. Parcels Decl., ¶ 4. Accordingly, this claim places in controversy at least **$3,708.00**, calculated as $123.60/day x 30 days.

**5.     Plaintiff's Individual PAGA Claims Place an Additional $11,000 In Controversy.**

63.     Plaintiff's claim for civil penalties under PAGA places at least an additional $11,000 in controversy.[5] Again, PAGA claims cannot be aggregated for purposes of establishing the

_____

[5] Defendants' analysis does not concede that any amount of penalties are owed, but rather analyzes the amount in controversy according to Plaintiff's allegations and theories based on the

$75,000 amount in controversy for traditional diversity purposes, but solely the value of Plaintiff's individual PAGA claims. Plaintiff's PAGA claim covers the period of June 13, 2023 to present. Compl., ¶ 50.

64.    <u>Meal Period and Rest Break Penalties</u>: Labor Code section 558 imposes a penalty for any meal period or rest break violation of "fifty dollars ($50)" for each initial violation or "one hundred dollars $100)" for each subsequent violation, each per pay period. Plaintiff worked approximately 14 pay periods during the PAGA period.  Assuming Plaintiff had at least one meal period and one rest break violation in each pay period during the PAGA period (while an assumption of one to five violations per *workweek* has already been discussed as reasonable), and even without applying any subsequent violation penalties, these claims for civil penalties place **$1,400.00** in controversy (14 pay periods x $50 = $700 for meal periods and $700 for rest breaks).

65.    <u>Minimum Wage and Overtime Penalties</u>: Labor Code section 1197.1, with regards to any failure to pay the applicable minimum wage, authorizes a civil penalty of $100 for initial violations and $250 for subsequent violations for each pay period. With regards to overtime, Labor Code section 558 also imposes an initial penalty of $50 for initial violations and $100 for subsequent violations. Assuming reasonably that Plaintiff had at least one minimum wage violation and one overtime violation in each pay period during the relevant period, and without applying the subsequent penalty figures, this claim for civil penalties places an additional **$2,100.00** in controversy ($1,400 for minimum wage, $700 for overtime).

66.    <u>Wage Statement Penalties</u>: Labor Code section 226.3 imposes a civil penalty of $250 for each initial violation and $1,000 for each subsequent violation when an employer fails to provide a wage statement or keep the requisite records. Indeed, Plaintiff alleges that these penalties are due and owing. Compl., ¶ 65. Defendants do not concede but rather dispute these civil penalties apply. Nevertheless, assuming a violation for each wage statement Plaintiff received, though without applying the subsequent violation rate, this claim for civil penalties places an additional

---

Complaint. Defendants dispute that any of the cited Labor Code sections concerning civil penalties are applicable. Even if any particular Labor Code section is applicable, Defendants dispute that Plaintiff or the "aggrieved employees" are entitled to any penalties.

**$3,500.00** in controversy (14 pay periods x $250 penalty).

67.    Waiting Time Penalties: Similar to an underlying violation, Labor Code section 256 imposes "a civil penalty in an amount not exceeding 30 days as waiting time under the terms of Section 203." Compl., ¶¶ 60, 61; *see Gaasterland v. Ameriprise Fin. Servs.*, No. 16-CV-03367-LHK, 2016 WL 4917018, at *6–7 (N.D. Cal. Sept. 15, 2016) (finding that for amount in controversy purposes, Labor Code section 256 applies a penalty of one day's pay for each day final wages not paid, not to exceed 30 days). Defendants do not concede but rather dispute these civil penalties apply. Nevertheless, this claim places **$3,708.00** in controversy ($123.60 daily wage rate x 30 days).

**6.    Plaintiff's Individual Portion of Attorneys' Fees Places an Additional $4,481 in Controversy**

68.    Plaintiff seeks to recover attorneys' fees, as purportedly allowed by law. Compl, p. 17. Plaintiff's claim for attorneys' fees must be included in the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). As set forth in the next section, Defendants reasonably estimate a total attorney fee recovery in this action of about $1,398,325. The share of that amount attributable to Plaintiff is therefore approximately **$4,481.81** ($1,398,325 / 312 putative class members).

69.    Thus, even without including punitive damages, or other various damages and penalties alleged in the Complaint, Plaintiff's individual claims alone, should she prevail on same, and as placed at issue via the allegations of the Complaint, raise an amount in controversy of about **$75,736.81**, an amount in excess of the jurisdictional minimum of $75,000 for traditional diversity purposes.

**B.    Plaintiff's Class Claims Amount to At Least $5,000,000 in Controversy**

70.    CAFA requires that the amount in controversy in a class action exceed $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). In determining the amount in controversy, CAFA requires courts to aggregate the claims of all individual class members. 28 U.S.C. §

1332(d)(6). Although Defendants deny that Plaintiff's claims have any merit, for the purposes of meeting the jurisdictional requirements for removal only, if Plaintiff were to prevail on every claim and allegation in her Complaint on behalf of the putative class, the requested monetary recovery would exceed $5,000,000.

### 1. **Plaintiff's Class Meal Period and Rest Break Claims Place at Least $748,640 in Controversy.**

71.    Plaintiff's claims for failure to provide compliant meal periods and rest breaks pursuant to the California Labor Code place at least $748,640 in controversy.

72.    If an employer fails to provide a compliant meal break or rest period, "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided. Lab. Code § 226.7(c).

73.    Plaintiff alleges that "[a]s a pattern and practice," Defendants "did not provide Plaintiff and the Class and Subclasses (a), (b), (e), and (f) with all required meal periods and rest breaks. . . ." Compl., ¶ 30.

74.    Because of the violations allegedly arising from this alleged "pattern and practice," Plaintiff claims that she and putative class members have "an entitlement to recovery . . . for the balance of the unpaid premium compensation . . . including interest, attorneys' fees, and costs of suit." Compl., ¶ 33.

75.    Based on Plaintiff's allegations, including that Defendants failed to provide compliant meal periods as a pattern and practice, it is reasonable to assume, for the purposes of this jurisdictional analysis only, that each putative class member suffered one meal period and one rest break violation per workweek. *See Garza*, 178 F. Supp. 3d at 912 (finding that defendant's "assumption of one violation per week is reasonable based on" plaintiff's allegations that "defendants maintained a 'policy or practice' of both meal and rest break violations."); *see also Amezcua*, 2023 U.S. Dist. LEXIS 26469, at *13 (accepting an assumption of 2 violations per week, "[t]he Court finds this calculations reasonable. Plaintiff alleges that defendants had a *policy and practice* of denying meal periods and 'as such, as this juncture, every meal period of every putative class member during the class period is in controversy'") (italics in original).

76. The 312 putative class members worked approximately 23,395 workweeks during the relevant period. Parcels Decl., ¶ 5. Defendants artificially limit their calculations of this claim through the date of removal, although the amount in controversy can actually be calculated through the date of expected trial. Defendants also assume, for ease of calculation, that a flat $16.00 hourly rate applies to the putative class and entire relevant period, and that each employee earned that amount and no more (despite receiving commissions and other pay), and although that figure is likely lower than the actual average rate. Parcels Decl., ¶ 5. Based on these figures, the amount in controversy would be **$748,640.00** consisting of $374,320 for meal period violations and $374,320 for rest break violations (for each, 23,395 workweeks x 1  hour x $16.00 per hour).

### 2. **Plaintiff's Class Minimum and Overtime Wage Claims Place At Least $3,368,880 in Controversy.**

77. Plaintiff's claims for failure to pay minimum and overtime wages put at least an additional $3,368,880 in controversy.

78. If an employer pays wages of less than minimum wage, the employee "is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage." Lab. Code § 1194(a). In addition, the "employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid." Lab. Code § 1194.2.

79. Plaintiff alleges that "[a]s a pattern and practice," Defendants regularly failed to compensate putative class members for all hours worked, "including preliminary and postliminary time spent working before and after the scheduled shift (including opening and closing work), time spent working through recorded meal periods, and 'unauthorized' overtime, as well as providing unlawful comp time." Compl., ¶ 36. Plaintiff also alleges that Defendants failed to pay putative class members at the correct regular rate of pay. *Id.*

80. Because of the violations allegedly arising as a result of this "pattern and practice," Plaintiff alleges that the putative class members are entitled to recover "for the unpaid balance of the full amount of minimum and overtime wages owing, including liquidated damages, interest, attorneys' fees, and costs of suit . . . ." Compl, ¶ 38. Again, Plaintiff seeks to recover double the allegedly unpaid minimum wages: the wages themselves, and liquidated damages in equal

amount.[6] Of course, Plaintiff also alleges she and the putative class are entitled to unpaid overtime wages.

81.    Based on these allegations, including the various theories of liability alleged, it is reasonable to assume, for purposes of this jurisdictional analysis only, that each putative class member incurred at least three hours of minimum wage violations, and three hours of overtime violations, per workweek. *See Jauregui*, 28 F.4th at 993–94 (accepting an assumption of one unpaid hour of minimum wage per workweek as reasonable); *Mendoza*, 2022 U.S. Dist. LEXIS 167940, at *13–14 (accepting defendant's estimate of "five hours of minimum wage per week" due to plaintiff's allegation that "minimum wage allegations are alleged to have occurred as a policy and practice"); *Francisco.*, 2017 WL 2541401, at *7 ("Because Plaintiff claims that unpaid minimum wage and overtime violations occurred regularly, as a pattern and practice, the Court finds Defendants' assumption of one minimum wage and overtime violation per workweek to be reasonable.") (citing *Campbell*, 471 Fed. App'x at 648–49).

82.    Once again artificially limiting the claim through the date of removal, and to a flat $16.00 hourly rate across the entire class, these claims place in controversy at least **$3,368,880.00**, consisting of $1,122,960 for minimum wage violations, $1,122,960 for liquidated damages, and $1,122,960 for overtime violations (as to each, 23,395 workweeks x 3 hours x $16.00 per hour).

### 3.    Plaintiff's Class Wage Statement Claim Places At Least an Additional $584,900 in Controversy.

83.    Plaintiff's claim for failure to provide compliant wage statements puts at least another $584,900 in controversy.

84.    An employee who suffers "injury as result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." Lab. Code § 226(e)(2)(B).

---

[6] Again, courts routinely include such liquidated damages in amount in controversy calculations. *See, e.g.*, *Jauregui*, 28 F.4th at 995, n.7.

NOTICE OF REMOVAL

85.     Plaintiff alleges that Defendants failed "in their affirmative obligation to keep *accurate* records," including, e.g., by failing to "maintain and provide wage statements reflecting how commissions for Plaintiff and the Class were calculated at time of hire, during employment, or with each payment or non-payment of commission," and, due to the other alleged Labor Code violations, failing to keep accurate records of putative class members' "gross wages earned, total hours worked, net wages earned, and all applicable hourly rates and the number of hours worked at each hourly rate." Compl., ¶ 41.

86.     Based on this "pattern, practice and uniform administration of corporate policy," Plaintiff alleges that the putative class is entitled to recovery "for all damages and/or penalties pursuant to Labor Code § 226, including interest thereon, penalties, reasonable attorneys' fees, and costs of suit." Compl., ¶ 42.

87.     Plaintiff's allegations place every wage statement at issue, in that Plaintiff alleges that each wage statement issued to the putative class was facially defective based upon Plaintiff's contention that the other alleged Labor Code violations caused inaccurate accountings in each and every wage statement. Defendants therefore reasonably assume, for the purposes of this jurisdictional analysis only, that each wage statement provided to each class member constitutes one violation. *See Duberry*, 2015 U.S. Dist. LEXIS 99171, at *7 ("[C]ourts have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice (or other similar language) and where the plaintiff offers no evidence rebutting this violation rate."); *Mejia*, 2015 U.S. Dist. LEXIS 67212, at *10 (finding that a 100% violation rate is permissible where plaintiff alleged uniform conduct).

88.     Artificially limiting the claim through the date of removal, and assuming one wage statement was issued for every two of the 23,395 workweeks, putative class members received at least 11,698 wage statements during the relevant period. Parcels Decl., ¶ 7. Even declining to include the higher "subsequent" penalties, and reasonably assuming for the reasons stated above that each wage statements constitutes a violation, the claim therefore places at least **$584,900.00** in controversy (11,698 wage statements x $50 penalty).

/ / /

**4.    Plaintiff's Waiting Time Penalty Claim Places At Least $890,880 in Controversy.**

89.    Plaintiff's claim for failure to pay all wages at separation or termination puts at least $890,880 in controversy.

90.    If an employer intentionally fails to pay all wages due to an employee at the time of termination, or within 72 hours after resignation, then the wages "shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced," for a maximum of 30 calendar days. Lab. Code §§ 201–203.

91.    To calculate waiting time penalties, an employee's daily rate of pay is multiplied by a maximum of 30 days, depending on the length of delay in receipt of wages. *See Mamika*, 68 Cal. App. 4th at 493 (holding that waiting time penalty is "equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days"); *Tajonar*, 2015 WL 4064642, at *4 (same). Where final "wages [due] are alleged to have not been paid, the full thirty-days may be used for each of the putative class members" when estimating that amount in controversy under CAFA. *Marentes*, 2015 WL 75616, at *9; *see also Crummie*, 2017 WL 4544747, at *3 (where a plaintiff alleges "putative class members were owed (and are still owed)" wages, it is "completely reasonable to assume waiting time penalties accrued to the thirty-day limit").

92.    Plaintiff claims that because of the foregoing alleged underpayments (relating to alleged unpaid meal period and rest break premiums, and minimum and overtime wages, "Defendants regularly failed to pay Plaintiff and the Class and all Subclasses their final wages . . . and accordingly owe waiting time penalties . . . ." Compl., ¶ 45.

93.    Defendants reasonably assume that putative class members worked an average of 8 hours per workday, and a flat hourly rate of $16.00 per hour for all employees, resulting in an average daily wage rate of $128. Parcels Decl., ¶ 6. Approximately 232 putative class members separated from employment during the relevant period. Parcels Decl., ¶ 6. Accordingly, this claim places in controversy at least **$890,880.00**, calculated as $128/day x 30 days x 232 employees.

/ / /

/ / /

NOTICE OF REMOVAL

**5.    Plaintiff's Request for Attorneys' Fees Places At Least Another $1,432,500 in Controversy.**

94.    Plaintiff seeks to recover attorneys' fees, as provided by statute. Compl, p. 17. Plaintiff's claim for attorneys' fees must be included in the amount in controversy. *Galt G/S*, 142 F.3d at 1156 ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). Typically, courts use a 25% benchmark when calculating the attorneys' fees in controversy for purposes of CAFA jurisdiction. *See, e.g. Rodriguez v. Cleansource, Inc.*, No. 14-CV-0789-L(DHB), 2014 WL 3818304, at *4 (S.D. Cal. Aug. 4, 2014).

95.    Applying the conservative assumptions above, the Complaint places at least **$5,593,300.00** in controversy based only on the foregoing claims [$748,640 (meal period and rest break violations) + $3,368,880 (minimum wage and overtime) $584,900 (wage statements) + $890,880 (waiting time penalties)].

96.    Attorneys' fees, calculated at 25% of the total recovery, come to another **$1,398,325.00**, bringing the total conservative estimate of the amount in controversy for purposes of CAFA jurisdiction to **$6,991,625.00**.

97.    In sum, Plaintiff's allegations place substantially more than the requisite $5 million in controversy. The jurisdictional amount-in-controversy requirement is met, and removal to this Court is proper under CAFA.

## TIMELINESS OF REMOVAL

98.    Plaintiff filed this Action in the superior court on August 19, 2024, and served the Summons and Complaint on Defendants on August 28, 2024. No previous notice of removal has been filed or made with this Court.

99.    This Notice of Removal is timely because it has been filed within 30 days of service. *See* 28 U.S.C. § 1446(b); Fed. R. Civ. P. 6(a)(1)(C).

## CONSENT OF ALL DEFENDANTS

100.    Defendants Destination XL Group, Inc. and Casual Male Store, LLC are the sole named defendants, other than fictitious defendants. Thus, Defendants are not required to obtain

consent from any other parties pursuant to 28 U.S.C. section 1446(b)(2), to the removal of the Action.

WHEREFORE, Defendants remove the above-entitled action now pending in the Superior Court for the State of California, San Diego County, to this Court.

Respectfully submitted,

Dated:  September 27, 2024                **GREENBERG TRAURIG, LLP**

By */s/ Ronald J. Holland*
Ronald J. Holland
Ryan C. Bykerk
Jonathan A. Schaub
Attorneys for Defendants
DESTINATION XL GROUP, INC. and
CASUAL MALE STORE, LLC

NOTICE OF REMOVAL